654

Tiger Creek Bus Line *v.* Tiger Creek Transp. Ass'n, Inc.

(*Knoxville*, September Term, 1948.)

Opinion filed December 11, 1948.

R. C. Campbell, Roy C. Nelson and Banks & Street, all of Elizabethton, for complainant.

M. S. Bangs, of Elizabethton, for defendant (petitioner).

Mr. Justice Burnett delivered the opinion of the Court.

The question posed here for our consideration is whether or not the Legislature by the enactment of Chapter 42 of the Public Acts of 1935 has excluded the petitioner from the jurisdiction of the State Railroad and Public Utilities Commission.

The petitioner has a "nonprofit Cooperative" charter granted pusuant to Code, section 4146(10). In view of this charter it takes the position that it is not subject to the jurisdiction of the State Utilities Commission because of subsection (e) of Section 1, of Chapter 42 of the Public Acts of 1935. The caption of that act is:

"An Act to define and limit the authority, powers and jurisdiction of the Railroad and Public Utilities Commission so as to exempt therefrom certain Federal and State Corporations, Agencies, Instrumentalities, and other public bodies and certain non-profit organizations herein defined as non-utilities; to authorize utilities to sell, lease or otherwise dispose of their property to non-utilities; and as a part hereof to amend sections 5380 to 5508, inclusive, of the official code of Tennessee, passed at the regular session of the General Assembly of the

State of Tennessee in 1931, known as the Code of Tennessee of 1932, said section of the code defining the term 'Public Utility.' "

Section 1 of the act is:

"Public Utilities are Defined.—The term 'public utility' is defined to include every individual, copartnership, association, corporation, or joint stock company, their lessees, trustees, or receivers, appointed by any court whatsoever, that own, operate, manage, or control, within the State of Tennessee, any street railway, interurban electric railway, traction company, all other common carriers, express, gas, electric light, heat, power, water, telephone, telegraph, or any other like system, plant or equipment, affected by and dedicated to the public use, under privileges, franchises, licenses, or agreements, granted by the state or by any political subdivision thereof; Provided, however, that the term 'public utility' as herein defined shall not be construed to include the following (hereinafter called non-utilities): (a) any corporation owned by or any agency or instrumentality of the United States; (b) any county, municipal corporation or other sudivision (subdivision) of the State of Tennessee; (c) any corporation owned by or any agency or instrumentality of the State of Tennessee; (d) any corporation or joint stock company more than fifty per cent of the voting stock or shares of which is owned by the United State (States), the State of Tennessee or by any non-utility referred to in (a), (b), and (c) hereof; (e) any cooperative organization, association or corporation not organized or doing business for profit; (f) any of the foregoing non-utilities acting jointly or in combination or through a joint agency or instrumentality."

The last above quotation is now carried in the code as section 5448.

The petitioning corporation was organized as a non-profit organization to operate a bus line in competition with a concern holding a certificate of convenience and necessity from the State Utilities Commission. This suit was brought to enjoin the petitioner here primarily on the ground that they did not possess such a certificate. They answered and set up their exemption to the jurisdiction of the State Utilities Commission because of the terms of the above Act. The Chancellor granted a permanent injunction concluding an able memorandum opinion thus:

"I prefer to sustain the bill on the broader holding that Chap. 42 Acts 1935 was not intended as and accordingly does not operate as an amendment or repeal of the Motor Carrier Act of 1933. For reasons hereinbefore indicated it is also held that defendant in its operation is subject to the jurisdiction of the railroad and Public Utilities Commission. Having failed to comply with the law, its operation constitutes an unjustified infringement on complainants' right, of a nature properly supporting the prayer for injunctive relief."

The Court of Appeals concurred in this conclusion and stated the determinative question in the following apt words:

"Did the Chancellor err in not holding that a cooperative operating a motor bus is exempt from the Motor Carrier Act, Chapter 119, Acts of 1933, carried into the Code as Sections 5501.1-5501.23, by the provisions of Chapter 42, Acts of 1935, redefining the term 'public utility', and providing that it should not include '(e) any cooperative organization, association or corporation not organized or doing business for profit.'"

We granted *certiorari* because of the importance of the question. The case has been ably briefed and argued here.

The argument and reasoning of the petitioner is that the Legislature by the enactment of Chapter 42 of the Public Acts of 1935 made and intended this act to be an amendment to ''sections 5380 to 5508, inclusive,'' of the Code of 1932 because they so said in the caption of the Act as heretofore quoted. They say that since the Motor Carrier Act has been codified as Sections 5501.1 to 5501.23 of the Code as it now is and was upon the enactment of the 1935 Act relied upon that certainly these sections 5501.1 to 5501.23 were and are included under ''sections 5380 to 5508, inclusive''.

When the ''Code of Tennessee of 1932'' was adopted by the ''General Assembly of the State of Tennessee in 1931'' Code sections 5471 to 5501, both inclusive, embodied the statute law governing Motor Carriers. The Legislature of 1933 by Chapter 119 of the Public Acts of that year expressly repealed Code ''Sections 5471 to 5501, both inclusive, of said Code of Tennessee of 1932,'' and by the same Chapter enacted an Act setting up a complete scheme governing Motor Carriers. This new scheme was not enacted as an amendment to the Code sections repealed nor was it designated by any particular Code section or sections. The compilers of the Code as it now exists saw fit to codify this Act (setting up a complete scheme governing Motor Carriers) as Code Sections 5501.1 to 5501.23.

Code Sections 5471 to 5501, inclusive (governing Motor Carriers, having been repealed prior to the enactment of Chapter 42 of the Public Acts of 1935 cannot be amended by that act because these Code Sections did

not exist. An amendatory act which attempts to amend an act which has previously been repealed is void and of no effect. *State ex rel. Thompson* v. *Dixie Finance Co.*, 152 Tenn. 306, 316, 278 S. W. 59.

■ It, therefore, necessarily follows that Chapter 42 of the Public Acts of 1935 did not act as an amendment to the Motor Carrier Act as then existing even though the caption to this act did include in it Code sections which formerly covered Motor Carriers.

■ The body of the Act, Chapter 42 of Public Acts 1935, is clearly limited to Code Section 5448 which is the Section of the general utility statute defining the term "public utility". There is no mention in the body of the Act of any other section. The effect of the Act was (1) to redefine the term "public utility" and (2) to permit any public utility as redefined to dispose of its assets and franchises to non-utilities as defined in Section 1 without the consent of the Railroad and Public Utilities Commission. Section 2 suggests the reason for referring in the caption to Code Sections 5380 to 5508, the effect being to give utilities a limited power to dispose of certain assets, a power expressly withheld under Code Section 5451 (d) in the absence of approval of the Commission.

Subsection (e) of Section 1 of the 1935 Act is relied upon by the petitioner as exempting it from the jurisdiction of the Utilities Commission. This subsection reads:

"Any cooperative organization, association or corporation not organized or doing business for profit".

In the petition it is said:

"Certainly that language is clear and does not limit the type, kind or size of a co-operative organization, as-

sociation or corporation not organized or doing business for profit and it certainly includes the petitioner and all other similar organizations."

If this provision was alone as an enactment of the Legislature this argument might be sound. The provision relied on though follows various named conditions or agencies that are exempt, that is: "ce_t_in Federal and State Corporations, Agencies, Instrumentalities, and other public bodies and certain nonprofit organizations herein defined as non-utilities". (Caption of Act.)

The statute law amended relates entirely to utilities and the powers of the Railroad and Public Utilities Commission. It does not apply to motor carriers for reasons heretofore pointed out. The petitioner is organized under Code Section 4146 (10), a codification of Acts 1923, Chapter 100, which provided for the formation of co-operative agricultural marketing associations. There is no indication or suggestion that the Legislature intended the Act in question to apply to such Code sections or statutory enactments under which the petitioner was organized. It is a sound rule of construction in construing the various parts and sections of a statute that, "such instruments", says Mr. Cooley, "adopted as whole, and a clause which, standing by itself, might seem of doubtful import, may be made plain by comparison with other clauses." He adds: "It is, therefore, a rule of construction that the whole is to be examined, with a view to arrive at the true intention of each part. Effect is to be given, if possible, to the whole instrument, and to every section and clause. If different portions seem to conflict, the courts must harmonize them, if practicable, and lean in favor of the construction which will render every word operative, rather than one which may make some idle

and nugatory." Cooleys' Const. Lim., pages 57, 58. This rule of construction is often called the rule of *ejusdem generis*.

■ ■ "The rule of interpretation indicated by these words is in substance that, where in a statute general words follow special words which limit the scope of such statute, these general words must be construed as applying to things of the same kind or class as those indicated by the preceding special words." *State* v. *Wheeler*, 127 Tenn. 58, 61, 152 S. W. 1037, 1038. Applying this rule of construction it would certainly seem that the use of words "any cooperative organization," etc., "not organized or doing business for profit" applies to the kind and class of organizations indicated by the preceding special exemptions. For these reasons the decree below must be affirmed.

All concur.