STATE of Tennessee, ex rel. the METRO-POLITAN GOVERNMENT OF NASH-VILLE AND DAVIDSON COUNTY, Plaintiff–Appellee,

v.

SPICEWOOD CREEK WATERSHED DISTRICT, and Daniel B. Graves, Henry W. Brockman, Jr., Ray Bell, Sarah Oram, and Sharon E. Work, acting as the Board of Directors of the Spicewood Creek Watershed District, Defendants–Appellants.

Supreme Court of Tennessee,
at Nashville.

Feb. 8, 1993.

Gary A. Davis, Ray, Farmer, Eldridge & Hickman, Knoxville, for appellants.

James L. Murphy, III, Dept. of Law of the Metropolitan Government of Nashville and Davidson County, Nashville, for appellee.

R. Claybourne Petrey, Jr., Dearborn & Ewing, Nashville, for amicus curiae, Waste Management, Inc. of Tennessee.

## OPINION

ANDERSON, Justice.

■ We granted this appeal to determine whether a watershed district (a quasi-governmental corporation) constitutes a public service district within the meaning of the Metropolitan Government Charter Act. The significance of this issue is more understandable when we recognize that the Metropolitan Government Charter Act prohibits a public service district from being created within the boundaries of a metropolitan government, and that a watershed district's approval may be required for a landfill proposed within its borders by a metropolitan government. In this instance, the trial court held that a watershed district is a public service district and, therefore, could not be located within the boundaries of the Davidson County Metropolitan Government, and the Court of Appeals affirmed. Because we have determined that a watershed district is not a public service district within the meaning of the applicable statute, we reverse the holding of the Court of Appeals.

## FACTUAL AND PROCEDURAL BACKGROUND

The facts in this appeal are undisputed. The defendant in this case, Spicewood Creek Watershed District ("Spicewood Watershed"), filed a petition to charter a watershed district with the Tennessee Soil Conservation Committee pursuant to the Tennessee Watershed District Act. Before the petition was filed, the Metro Council had authorized an investigation of property located within the proposed watershed district to determine its suitability as the location of a sanitary landfill. Thereafter, the plaintiff, Metropolitan Government of Nashville and Davidson County, ("Metro"), filed this action alleging that the creation of the watershed district violated the Metropolitan Government Charter Act, Tenn. Code Ann. § 7–1–104 (1992). That statute provides in part:

When a metropolitan government charter commission is created, ... no municipality and no *public service district, including, but not limited to, a utility district, sanitary district or school district,* shall thereafter be created in the county proposed to be included in such consolidation ... unless ... a charter has been adopted ... permitting such municipalities or public service districts as described above. (Emphasis added.)

Metro argued that the Spicewood Watershed District is a public service district and, as such, cannot be located within the boundaries of a metropolitan government unless the charter of that government contains a provision allowing its creation. Metro's charter did not contain such a provision allowing the creation of watershed districts.

After the institution of this action, Spicewood Watershed received a charter conferring upon it all the powers enumerated in the Tennessee Watershed District Act.[1] Acting pursuant to its charter and statutory authority, it promulgated regulations that classified the landfill disposal of solid waste as an activity threatening water quality. The regulations required that proposals to construct landfills within the watershed district be approved by the Spicewood Watershed Board of Directors. Thereafter, Spicewood Watershed informed Metro that if it intended to construct a landfill on property inside the watershed district, a proposal would have to be submitted to the Board of Directors of the Spicewood Watershed District for its approval.

Both parties to the litigation then filed motions for a judgment on the pleadings. The trial court granted Metro's motion, and held that Spicewood Watershed was a public service district whose creation within the boundaries of the metropolitan government violated Tenn.Code Ann. § 7–1–104 (1992). Accordingly, the charter was declared null and void, and an injunction was

---

1. In this appeal there is no dispute that the appellant, Spicewood Creek Watershed District, complied with all of the provisions of the Tennessee Watershed District Act (Tenn.Code Ann. § 69–7–101, et seq.) in organizing and gaining approval from the State Soil Conservation Committee.

entered restraining Spicewood Watershed from taking future action as a watershed district. The Court of Appeals affirmed that holding, and we granted permission to appeal. We now reverse based on the following analysis.

## STATUTORY CONSTRUCTION

■ In determining whether the phrase "public service district" includes watershed districts formed pursuant to Tenn.Code Ann. §§ 69–7–101, et seq., we are guided by the rules and conventions of statutory construction. The guiding principle of statutory construction is to give effect to the legislative intent. *Long v. Stateline Sys., Inc.*, 738 S.W.2d 622, 623 (Tenn.1985). We must determine the legislative intent whenever possible from the plain language of the statute, "read in the context of the entire statute, without any forced or subtle construction which would extend or limit its meaning." *National Gas Distribs. v. State*, 804 S.W.2d 66, 67 (Tenn.1991). Moreover, courts should avoid a construction which places one statute in conflict with another. *Parkridge Hosp., Inc. v. Woods*, 561 S.W.2d 754, 755 (Tenn.1978). In addition, potential conflicts between statutes should be resolved in favor of each statute, if possible, to provide a harmonious operation of the laws. *Id.* This rule is codified at Tenn.Code Ann. § 1–3–103 (1985), which directs that conflicts among Code provisions are to be resolved so that each provision prevails as to "all matters and questions" within the special purview of the relevant chapter or title. *See also Jenkins v. Loudon County*, 736 S.W.2d 603, 607 (Tenn.1987).

In its argument, Metro correctly points out that the purpose of Tenn.Code Ann. § 7–1–104 is "to consolidate the functions of the two former governments so as to eliminate duplication and overlapping of duties and services by which economic savings to taxpayers will be realized." *Metropolitan Gov't of Nashville and Davidson County v. Poe*, 215 Tenn. 53, 80, 383 S.W.2d 265, 277 (1964). Metro contends that since there is a possibility of duplication and overlapping between a watershed district and a metropolitan government, the term "public service district" should be liberally construed to include watershed districts. In support of that contention, Metro relies upon Tenn.Code Ann. § 7–1–102(b) (1992), which directs that chapters 1 through 3 of Title 7 are to be "liberally construed as a utilization of the constitutional power granted by ... article XI, section 9 of the Constitution of Tennessee...."

Clearly, Title 7 of the Tennessee Code was designed to implement Article XI, Section 9 of the Tennessee Constitution that empowered the General Assembly to "provide for the consolidation of any or all of the governmental and corporate functions now or hereafter vested in municipal corporations with the governmental and corporate functions now or hereafter vested in the counties in which such municipal corporations are located." However, Metro has failed to demonstrate how that legislative design is frustrated by allowing the creation of watershed districts within the boundaries of a metropolitan government. Both the statute and the constitutional provision were enacted to allow city and county governments to consolidate and thereby prevent the duplication and overlapping that occur between city and county governments, not between a metropolitan government and a watershed district. The definition of metropolitan government as "the political entity created by consolidation of all, or substantially all, of the political and corporate functions of a *county and a city or cities*" is illustrative of that purpose. Tenn.Code Ann. § 7–1–101(4) (1992) (emphasis added).

■ The statute itself does not contemplate the consolidation of *all* the political and corporate functions of a county and city, yet Metro would have us interpret the statute to require the consolidation of the political and corporate functions of every quasi-governmental corporation located within the geographical boundaries of a metropolitan government if there is any chance, however slight, for duplication and overlapping of services. We conclude that such a broad and forced construction would

extend the meaning of the statute beyond what the legislature intended. *National Gas Distribs.*, 804 S.W.2d at 67.

■ Moreover, the only definition in the statute of the term "public service district" is the use of the language "including but not limited to a utility district, sanitary district or school district...." Tenn.Code Ann. § 7–1–104 (1992). The term "a watershed district" is conspicuous by its absence, and such an imprecise definition cannot be dispositive of the issue. It is true that the enumeration of the specific types of districts is illustrative and serves as an explanation of the term "public service district," but the term must be confined to include only entities of the same type or class as the examples listed. *See, e.g., Nance v. Westside Hosp.*, 750 S.W.2d 740, 743 (Tenn. 1988); *Tiger Creek Bus Line v. Tiger Creek Transp. Ass'n*, 187 Tenn. 654, 216 S.W.2d 348 (1948); *State v. Grosvenor*, 149 Tenn. 158, 258 S.W. 140 (1924); *State v. Wheeler*, 127 Tenn. 58, 152 S.W. 1037 (1912). We do not agree that a watershed district is of the same type or class as a utility district, sanitary district or school district. A watershed district is created to protect soil and water resources within the natural boundaries of the watershed wherever located, Tenn.Code Ann. § 69–7–118 (1987), while the other entities listed provide utility services to individuals living within the boundaries of the metropolitan government. Moreover, if the General Assembly had intended to restrict the creation of watershed districts in counties with metropolitan governments, it could easily have specifically included watershed districts in the list of entities since the Tennessee Watershed District Act was passed two years before the adoption of Tenn.Code Ann. § 7–1–104 (1992). It is a familiar rule that the legislature is presumed to have knowledge of its prior enactments and to know the state of the law at the time it passes legislation. *Neff v. Cherokee Ins. Co.*, 704 S.W.2d 1, 4 (Tenn.1986).

Likewise, the precise requirements for organizing a watershed district are set forth in Tenn.Code Ann. § 69–7–103. First, a petition that is signed by at least 20 percent of the landowners who own at least 25 percent of the real property within the boundaries of the proposed district must be filed with the State Soil Conservation Committee. That committee is vested with the "sole responsibility for administering and approving watershed districts." Tenn. Code Ann. § 43–14–206(6) (1987). A certification by either the county clerk or tax assessor as to the accuracy of the percentages must be filed as an exhibit to the petition, and a verified copy of the petition must be filed with the county clerk of each county in which any portion of the proposed district is located. The State Soil Conservation Committee then determines whether the petition is sufficient and notifies the acting chairman of the board of the proposed district. If sufficient, the property owners within the district vote to decide whether or not to establish the district permanently. Specific instructions for conducting the election are included in the statute. If a majority of the property owners vote in favor of creating the district, the State Soil Conservation Committee issues a charter of incorporation to the district, which is thereafter administered by a board of directors elected by the property owners and officers selected by the board. *See* Tenn.Code Ann. §§ 69–7–106 through 69–7–114 (1987).

Nowhere in this detailed statutory scheme is there a provision requiring a proposed watershed district located within the boundaries of a metropolitan government to obtain the approval of the metropolitan government before organizing. In fact, the *only* body vested with the responsibility of administering and approving watershed districts is the Tennessee Soil Conservation Committee. If we accepted Metro's argument, we would be judicially creating another condition in the charter process for watershed districts located within the boundaries of metropolitan governments. Such a construction would be contrary to the rules of statutory construction, which require that conflicts between Code provisions be resolved so that each provision prevails as to "all matters and questions" within the special purview of the statute. *See* Tenn.Code Ann. § 1–1–103

(1985). While Title 7 (Tenn.Code Ann. § 7–1–104) of the Code controls as to questions involving metropolitan governments, the Tennessee Watershed District Act, Tenn. Code Ann. §§ 69–7–101 et seq., controls this question effecting the formation of watershed districts.

Accordingly, after a careful review of all the statutes and the application of the relevant statutory rules of construction, we conclude that a watershed district is not a public service district for purposes of Tenn. Code Ann. § 7–1–104 (1992). Therefore, we reverse the judgment of the Court of Appeals and grant the appellant, Spicewood Creek Watershed District, the requested judgment on the pleadings. The costs of this appeal are taxed to the appellee, Metropolitan Government of Nashville and Davidson County.

REID, C.J., and DROWOTA and DAUGHTREY, JJ., concur.

O'BRIEN, J., not participating.