# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE

## AT KNOXVILLE

## JUNE 1999 SESSION

FILED

October 18, 1999

Cecil Crowson, Jr.
Appellate Court Clerk

| | | |
|---|---|---|
| **STATE OF TENNESSEE,** | * | C.C.A. # 03C01-9808-CR-00284 |
| Appellee, | * | KNOX COUNTY |
| VS. | * | Honorable Mary Beth Leibowitz, Judge |
| **JEFFREY B. LINDEMEYER,** | * | (Selling Drugs In School Zone) |
| Appellant. | * | |

FOR THE APPELLANT:

ROBERT A. COLE
Attorney At Law
3715 Powers Street
Knoxville, TN 37918

FOR THE APPELLEE:

PAUL G. SUMMERS
Attorney General & Reporter

TODD R. KELLEY
Assistant Attorney General
425 Fifth Avenue North
2nd Floor, Cordell Hull Building
Nashville, TN 37243-0493

RANDALL EUGENE NICHOLS
District Attorney General

C. LEON FRANKS
Assistant District Attorney
P. O. Box 1468
Knoxville, TN 37901-1468

OPINION FILED: _____

**AFFIRMED**

**JOHN EVERETT WILLIAMS,**
Judge

# OPINION

The defendant, Jeffrey B. Lindemeyer, pleaded guilty to selling within a school zone a Schedule IV controlled substance and between 0.5 of an ounce and ten pounds of a Schedule VI controlled substance. The defendant was sentenced as a Range I offender. The Schedule IV violation constituted a Class C felony, and the Schedule VI violation constituted a Class D felony.[1] Although the defendant met the minimum eligibility requirements for Community Corrections, the trial court determined that the Drug-Free School Zone Act (School Zone Act) required incarceration for at least the minimum sentence and therefore imposed a three-year sentence for the Class C offense and a two-year sentence for the Class D offense, to be served concurrently for an effective sentence of three years in the Department of Correction. The defendant appeals, asserting that the School Zone Act does not preclude Community Corrections, in lieu of incarceration, for the mandatory minimum sentence. We AFFIRM the trial court's sentence.

## BACKGROUND

The defendant pleaded guilty to two felony violations of the Tennessee Drug Control Act. Both offenses occurred within a "school zone" as defined by the School Zone Act. The defendant met the minimum eligibility requirements for a Community Corrections sentence, and the trial court would have imposed such sentence but for the School Zone Act.

## ANALYSIS

Since no located case addresses the School Zone Act in any context, this appeal presents a case of first impression. The facts are not in dispute.

---

[1] The Schedule IV violation would usually constitute a Class D felony; the Schedule VI, a Class E felony; the Schedule IV violation, a Class D felony. See Tenn. Code Ann. § 39-17-417(g)(1), (e)(2). However, the School Zone Act raises a violation of Tennessee Code Annotated § 39-17-417, by one grade. See Tenn. Code Ann. § 39-17-432(b).

The defendant asserts that the School Zone Act did not bar his receiving a Community Corrections sentence and maintains that the CCA, enacted in 1985, required the trial court to consider such sentencing:

> An offender who meets all of the following minimum criteria shall be considered eligible for punishment in the community under the provisions of [the CCA] . . . : <u>Notwithstanding any other provision of law to the contrary, the court is authorized to sentence an eligible defendant as defined in this section to any appropriate community-based alternative to incarceration provided in accordance with the terms of this chapter</u>; and under such additional terms and conditions as the court may prescribe, in lieu of incarceration in a state penal institution or local jail or workhouse.

Tenn. Code Ann. § 40-36-106(a), (e)(1) (emphasis added).

The trial court, however, concluded that the School Zone Act required incarceration for at least the minimum sentence within the range for the offenses. The School Zone Act, enacted in 1995, establishes "the grounds or facilities of any school or within one thousand feet (1,000') of the real property that comprises a public or private elementary school, middle school or secondary school . . . " as a drug-free zone. Tenn. Code Ann. § 39-17-432(b). The statute then raises the felony offense grade for violations of Tennessee Code Annotated § 39-17-417[2] by one step. <u>See</u> Tenn. Code Ann. § 39-17-432(b). Interpretation of subsequent language is the crux of this dispute:

> Notwithstanding any other provision of law or the sentence imposed by the court to the contrary, a defendant sentenced for a violation of subsection (b) <u>shall be required to serve at least the minimum sentence for such defendant's appropriate range of sentence</u>.

Tenn. Code Ann. § 39-17-432(c) (emphasis added).

The defendant proposes that mandatory service of a minimum sentence does not necessarily entail incarceration for that term but may include

---

[2] That statute establishes the felony grades for manufacture, delivery, or sale of a controlled substance and for possession of a controlled substance with intent to sell, deliver, or manufacture.

Community Corrections, especially since the CCA requires consideration of such alternative sentencing if a defendant meets the minimum eligibility criteria. He also notes that the School Zone Act specifically prohibits release eligibility status or parole, see Tenn. Code Ann. § 39-17-432(d), or action by either the governor's office or by the board of probation and parole, see Tenn. Code Ann. § 39-17-432(e), from prematurely releasing a defendant from serving the minimum sentence. The defendant contrasts these explicitly articulated proscriptions against the absence of any similar language addressing the CCA.

The defendant's appeal, predicated on an alleged conflict between the Acts, presents an issue of statutory construction. Courts must construe statutes as they find them, see Watts v. Putnam County, 525 S.W.2d 488, 494 (Tenn. 1975), and must grant their fullest possible effect, neither unduly restricting them nor expanding them beyond intended scope. See Wilson v. Johnson County, 879 S.W.2d 807, 809 (Tenn. 1994). The "cardinal rule" of statutory construction "is to ascertain and give effect to the intent and purpose of the Legislation [sic] in relation to the subject matter of the legislation . . . ," Rippeth v. Connelly, 447 S.W.2d 380, 381 (Tenn. Ct. App. 1969), and the intent and purpose of the legislation is expressed by "the natural and ordinary meaning of the language used, when read in the context of the entire act or statute, without any forced or subtle construction to limit or expend [sic] the import of that language." Oliver v. King, 612 S.W.2d 152, 153 (Tenn. 1981). Therefore, when construing statutes this Court has a "duty to reconcile inconsistent or repugnant provisions of a statute to construe a statute so that no part will be inoperative [,] superfluous, void or insignificant. Effect must be given to every word, phrase, clause and sentence of the act in order to achieve the legislative intent . . . . " Dingman v. Harvell, 814 S.W.2d 362, 366 (Tenn. Ct. App. 1991).

We must also consider the Code's specific instruction regarding criminal statute interpretation:

> The provisions of this [Criminal Code] shall be construed according to the fair import of their terms . . . to promote justice, and effect the objectives of the criminal code.

Tenn. Code Ann. § 39-11-104.

Further, courts must avoid constructions that conflict one statute against another. See State ex rel. Metro. Gov't v. Spicewood Creek Watershed Dist., 848 S.W.2d 60, 62 (Tenn. 1993). If conflict exists, courts must "search for and give the fullest possible effect to the legislative purpose underlying both statutes." Pacific Eastern Corp. v. Gulf Life Holding Co., 902 S.W.2d 946, 954 (Tenn. Ct. App. 1995).[3]

We begin by identifying the legislative intent of the Acts. The General Assembly left no room for doubt regarding their goal:

> It is the intent of this section to create Drug-Free School Zones for the purpose of providing all students in this state an environment in which they can learn without the distraction and dangers that are incident to the occurrence of drug activity in or around school facilities. The enhanced and mandatory minimum sentences required by [the School Zone Act] for drug offenses occurring in a Drug-Free School Zone are necessary to serve as a deterrent to such unacceptable conduct. . . . A defendant [violating the statute] shall be required to serve at least the minimum sentence for such defendant's appropriate range of sentence."

Tenn. Code Ann. § 39-17-432(a), (c) (emphasis added).

The CCA seeks to:

---

[3] In some circumstances, courts of this state have resolved statutory conflicts with the doctrine of repeal by implication in favor of the more recent of the two statutes. See Pacific Eastern Corp., 902 S.W.2d at 946. The more recent statute must "cover [ ] the whole subject matter of an earlier act," and it must be "evident that [the more recent statute] was intended to be a revision of, or substitute for, the earlier act," such that the more recent, even absent express language repealing the prior act, accomplishes just that effect. Melton v. State, 23 S.W.2d 662, 663 (Tenn. 1930). This doctrine is disfavored, see Pacific 902 S.W.2d at 984, and we need not apply it in this case.

[e]stablish a policy within the state to punish selected, nonviolent felony offenders in front-end community based alternatives to incarceration, thereby reserving secure confinement facilities for violent felony offenders; . . .

Tenn. Code Ann. § 40-36-103(1). The CCA "shall be interpreted as minimum state standards, guiding the determination of eligibility of offenders under this chapter." Tenn. Code Ann. § 40-36-106(d). Meeting the statutory minimum eligibility criteria does not guarantee a Community Corrections sentence in lieu of incarceration. See State v. Grigsby, 957 S.W.2d 541, 547 (Tenn. Crim. App. 1997); State v. Grandberry, 803 S.W.2d 706, 707 (Tenn. Crim. App. 1990). In contrast, a defendant sentenced under the School Zone Act must serve the minimum sentence for the offense despite any "sentence imposed by the court to the contrary." Tenn. Code Ann. § 39-17-432(c).

To resolve the conflict, we focus on the legislative intent in requiring a defendant "to serve at least the minimum for [his] appropriate range of sentence": Does this "service" equate to incarceration?

A detailed discussion of the Tennessee Criminal Reform Sentencing Act of 1989 (Sentencing Act) is outside the scope of this opinion, but representative language within that Act assists our analysis. Regarding the Sentencing Act's "appropriate range of sentence," we note that "range," a determination made by the trial court based on a defendant's prior record, subdivides the sentence for a given offense into discrete parameters, each with an upper and a lower limit. See Tenn. Code Ann. § 40-35-101, sentencing comm'n comments; see also Tenn. Code Ann. § 40-35-112 (establishes ranges of sentences for the different classes of felony offenses). For example, punishment for the defendant's Class C felony conviction must be not less than three years nor more than fifteen years. See Tenn. Code Ann. § 40-35-111(b) (3). The defendant, a Range I offender, receives a sentence not exceeding six years but not less than three years for this conviction. See Tenn. Code Ann. § 40-35-112 (a) (3). Also, a trial

court may find an defendant to be "especially mitigated" and reduce the minimum Range I sentence by ten percent.[4] See Tenn. Code Ann. § 40-35-109 (a), (b). Further, absent enhancing or mitigating factors, the presumptive sentence for all but Class A felonies is "the minimum sentence in the range." See Tenn. Code Ann. § 40-35-210.

In short, the Sentencing Act's scheme establishes a "minimum sentence" appropriate to the circumstances of a felony conviction. A defendant's subsequent service may include incarceration, probation, Community Corrections, or split confinement. See Tenn. Code Ann. § 40-35-104. Therefore, the School Zone Act requires more than mere service of the minimum sentence by means including, but not limited to, incarceration: otherwise, the statute is redundant.

The General Assembly, however, clearly distinguished specific defendants for punishment more extreme and certain than generally provided for in the Sentencing Act. In fact, certain provisions distinguish the School Zone Act from the Sentencing Act's standard scheme, thereby precluding redundancy. Two provisions prevent either (1) release eligibility status or parole or (2) action by the governor's office or the board of probation and parole from releasing a defendant from incarceration before the expiration of the minimum sentence. The defendant notes that the School Zone Act does not address the CCA in this manner and argues that this silence implies that Community Corrections is a viable alternative. The relevant inquiry becomes: Does the legislature's omitting reference to the CCA create a further subdivision of offenders?

---

[4] The trial court may also reduce the release eligibility date by twenty percent, or reduce both the minimum sentence and the release date by the stated percentages. See Tenn. Code Ann. § 40-35-109(b).

The defendant's argument requires an overly restrictive reading of the School Zone Act. However, principles of statutory construction compel our interpreting a statute "not from special words in the single sentence or section, but from the statute taken as a whole and reviewing the legislation in light of its general purposes." Tidwell v. Servonmation-Willoughby Company, Inc., 483 S.W.2d 98, 100 (Tenn. 1972).

Read as a whole, the fair import of the School Zone Act is a legislative goal of deterrence through guarantee of minimum incarceration terms for the qualifying offenses. After creating a distinct subdivision of offenders based on specific illicit activity, the School Zone Act both raises the offense classification by one grade, and thereby the minimum punishment range, and requires the trial court's imposing at least the minimum sentence. The School Zone Act then retracts some discretion generally granted a trial court in sentencing matters: A defendant must serve his minimum sentence "[n]otwithstanding any . . . . sentence imposed by the court to the contrary." Tenn. Code Ann. § 39-17-432(c). We read the subsequent proscriptions against avoiding the minimum sentence by the enumerated means as emphasizing the required service of a mandatory incarceration, rather than as impliedly carving out an exception to the rule by omission. The overall statute speaks for a mandatory incarceration.[5]

In conclusion, we find that the General Assembly intended that the School Zone Act achieve more than a "minimum sentence," because the Code already provides minimum sentences for felony offenses. A comprehensive reading of this Act indicates that our legislature intended minimum terms of incarceration, not minimum terms for incarceration. Absent specific language from either the General Assembly or the Tennessee Supreme Court, we decline to create an

---

[5] Since we find the statute to unambiguously require incarceration for a minimum sentence, we need not apply the "general rule of statutory construction that ambiguity in criminal statutes must be construed in favor of the defendant." State v. Blouvett, 904 S.W.2d 111, 113 (Tenn. 1995).

-8-

escape hatch for those defendants clearly qualifying for enhanced punishment and sentencing. To hold otherwise would negate the General Assembly's explicit goal of increased deterrence and heightened protection for youths congregated in school environments.

## CONCLUSION

We AFFIRM the trial court's sentence because we conclude that the General Assembly intended that the language regarding service of the entire minimum sentence for a conviction under the School Zone Act mandates incarceration for at least that term.

_____
JOHN EVERETT WILLIAMS, Judge

CONCUR:

_____
JOHN H. PEAY, Judge

_____
DAVID G. HAYES, Judge