SHELBY COUNTY and CHARLES BAKER, Chairman of the
Shelby County Court, RILEY C. GARNER, Trustee of
Shelby County, all residents of Shelby County,
Tennessee

*v.*

E. W. HALE, SR., DAN C. MITCHELL and RUDOLPH JONES,
all residents of Shelby County, Tennessee

(*Nashville,* December Term, 1955)

Opinion filed July 20, 1956.

E. W. HALE, JR., County Attorney of Shelby County, Memphis, for appellants.

JOHN M. HEISKELL and LARRY CRESON, Memphis, for appellees.

GEORGE F. McCANLESS, Attorney General, ALLISON B. HUMPHREYS, Solicitor General, Nashville, and MILTON P. RICE, Assistant Attorney General., for Attorney General, State of Tennessee.

Mr. Justice Burnett delivered the opinion of the Court.

The bill in this cause was filed by the appellees, who at the time were Commissioners of Shelby County constituting the Board of County Commissioners, Shelby County, Tennessee. In this bill they sought a declaratory judgment of their rights to have paid them the annual salary as prescribed by Chapter 237, Sec. 6 of the Private Acts of Tennessee for 1911, as amended by Chapter 91 of the Private Acts of 1955 as and from April 4, 1955. The bill, of course, under the Declaratory Judgments Act, T.C.A. sec. 23-1101 et seq., seeking the declaration as to the constitutionality of an act of the Legislature, made the Attorney General of the State a party defendant.

The bill recited as a fact that Chapter 91 of the Private Acts of 1955 was approved and ratified by a unanimous vote of the Quarterly County Court of Shelby County on April 4, 1955, which date was within 60 days after the sine die adjournment of the General Assembly of the State of Tennessee for the year 1955, and that the approval of said Act by the County Court of Shelby County was duly certified by the Chairman of that court to the Secretary of State for the State of Tennessee.

The bill further alleged that the appellants had declined to recognize the rights of the appellees, as asserted therein, because they had been advised that Chapter 91 of the Private Acts of 1955 is in violation of the Sixth Amendment to the Constitution of Tennessee, art. 11, sec. 9, which amendment was set forth therein and is referred to as "The Home Rule Amendment".

The Attorney General of the State filed a separate answer in which he admitted the allegations of fact set

forth in the bill, but his interpretation of the Sixth amendment to the Constitution of Tennessee was that this amendment prohibited the alteration by special, local or private legislation of the salary of a county officer prior to the end of the term for which such public officer was selected whether or not the same had been approved by the legislative body of the county and he was therefore of the opinion that Chapter 91 of the Private Acts of 1955 was unconstitutional as violative of the Sixth Amendment. This answer raises the question to be determined herein.

The two Chancellors of Shelby County, sitting in banc, sustained the bill and concurred in holding that Chapter 91 of the Private Acts of 1955 was a valid and constitutional amendment of Chapter 237, Section 6 of the Private Acts of 1911, it having been unanimously approved by the local legislative body of Shelby County, Tennessee.

As a result of this ruling Shelby County and the Chairman of the County Court and the Trustee constituting the Board of County Commissioners of Shelby County, Tennessee, have prayed and perfected an appeal. The Attorney General of the State in the first instance thought that probably the matter was of local concern and thought that if it could be worked out locally that he would not contest the matter but since the Commissioners saw fit to have a court of last resort pass on the question, and since the question was of importance to all counties of the State, the Attorney General has likewise filed a brief and takes the position that the act is unconstitutional as violative of Article 11, Section 9 of the Constitution of the State. Briefs have been filed, able

arguments heard and we now have the matter for disposition.

The question as presented by the assignments is in effect novel. It, for the first time, involves the direct construction of the Sixth Amendment of the Constitution of Tennessee. Article 11, Section 9 of the Constitution of Tennessee is found in Volume 1, Tennessee Code Annotated, at page 762 and 763. The Sixth Amendment (the part controlling in this litigation and here involved) is the second paragraph of Article 11, Section 9. We quote from the beginning of Section 9 through the second paragraph which is the Sixth Amendment, as follows:

"Power over local affairs—Home rule for cities and counties—Consolidation of functions. — The Legislature shall have the right to vest such powers in the Courts of Justice, with regard to private and local affairs, as may be expedient.

"*The General Assembly shall have no power to* pass a special, local or private act having the effect of removing the incumbent from any municipal or county office or abridging the term or altering the salary prior to the end of the term for which such public officer was selected, *and any act of the General Assembly private or local* in form or effect applicable to a particular county or municipality either in its governmental or its proprietary capacity shall be void and of no effect unless the act by its terms either requires the approval by a two-thirds vote of the local legislative body of the municipality or county, or requires approval in an election by a majority of those voting in said election in the municipality or county affected." (Italics ours.)

One reading the second paragraph above plainly and understandably finds that the clear language of this section is that *the General Assembly shall have no power to enact* legislation which has the effect of (1) removing an incumbent from a county or municipal office, (2) abridging the term of such office or (3) altering the salary of such office during the term thereof. We have italicized in the quotations from the Constitution above the first few words which to us have a clear and understandable and applicable application to these three things that we have numbered immediately above. We have likewise italicized the first few lines of the second part of this section which to us (and the language seems clear to mean this to us) is a distinct provision in which the General Assembly has power to enact other local legislation, but the legislation shall be void and of no effect unless this other legislation by its terms requires the approval of the electorate or the governing body of the county or municipality. When we thus construe this paragraph of the Constitution all the words in the paragraph have meaning and force and there is no repugnancy between these provisions.

In the first provision covering the three things above enumerated the language is a clear prohibition against any legislation affecting these things (see Sutherland Statutory Construction, 3rd Ed., Vol. 3, sec. 5807), while in the second provision the legislature may enact any kind of local legislation except that above prohibited provided certain things therein set forth are done. Mr. Walter Chandler in the Constitutional Convention so aptly named these distinctions thus: "One is the deprivation of legislative power and another is limitation on

510

legislative power.'' Journal of Constitutional Convention, p. 1124.

■ ■ If we were to adopt the construction as given by learned and able Chancellors, we would in effect be wholly eliminating the words ''the General Assembly shall have no power * * *'', from the section.

''A statute should be construed so that effect is given to all its provisions, so that no part will be inoperative or superfluous, void or insignificant, and so that one section will not destroy another unless the provision is the result of obvious mistake or error.'' Sutherland Statutory Construction, 3rd Ed., Vol. 2, Sec. 4705.

The Chancellors, as above indicated, in effect eliminated those words and held that whether it came to removing one from office or cutting down the term or changing the salary, all that was necessary to be done was that the local governing bodies approve it within the required time, etc. They held the second provision modified the first and was applicable thereto. We think this interpretation wrong.

The Court, in construing the Constitution must give effect to the intent of the people that are adopting it, as found in the instrument itself, and it will be presumed that the language thereof has been employed with sufficient precision to convey such intent; and where such presumption prevails nothing remains except to enforce such intent. *Prescott v. Duncan,* 126 Tenn. 106, 148 S.W. 229.

■ We cannot see any doubt as to the meaning of this language. It seems plain to us that it means just what we have interpreted it above as meaning. If there should be doubt though it is the first obligation of the Court to go to the proceedings of the Constitutional Convention

which adopted this provision and see from these proceedings what the framers of this resolution intended it to mean. *State v. Cloksey,* 37 Tenn. 482. When we go to the Journal of the Constitutional Convention at pages 1023, 1037, 1113, 1114, 1124, 1125, it is very clear from the debate of the various members on this very question that the interpretation that we have given the constitutional provision above is the correct one.

■ ■ As we have said once or twice above this provision clearly means one thing and when it does the judiciary should not give it another meaning. *Henry v. White,* 194 Tenn. 192, 250 S.W.2d 70. If there are portions of the constitutional provision which seem to conflict it is our duty to harmonize these portions and favor the construction which will render every word operative rather than one which would make some words idle and meaningless. *Tiger Creek Bus Lines v. Tiger Creek Transportation Ass'n,* 187 Tenn. 654, 216 S.W.2d 348.

■ ■ There are other rules of statutory and constitutional construction which may be applied here and among them is that the constitutional provision will be taken literally unless its language is of doubtful import. When the words are free from ambiguity and doubt, and express plainly and clearly the sense of the framers of the Constitution there is no occasion to resort to other means of interpretation. *State ex rel. Coates v. Manson,* 105 Tenn. 232, 58 S.W. 319.

The appellees as well as the appellants say that the opinion of *James A. Blackwell et al. v. Shelby County et al.,* handed down by this Court at our December Term, is controlling in the instant case. The opinion in this case was not for publication and affected Shelby County alone. It was the purpose and intention of this Court in

that opinion to hold simply that the officers involved in that litigation (of Shelby County) were entitled to be compensated under a public law of general application enacted in 1953 notwithstanding the private acts to the contrary. The opinion which we have before us at the present time does not discuss Article 11, Section 9 or attempt to construe it. Another case that was cited by the appellees is that of *Duncan v. Rhea County,* —Tenn.—, 287 S.W.2d, 26, which was decided at the same time, but obviously this opinion likewise has nothing to do with the discussion hereinabove had. The constitutional provision here under consideration was not discussed or construed in the Duncan case because the Court found that the legislative act there in question had become a valid law prior to the effective date of the constitutional amendment.

The instant case has been exceptionally well prepared and presented. After much thought and study we are satisfied that Chapter 91 of the Private Acts of 1955 is unconstitutional as violative of Article 11, Section 9, the portion thereof which is hereinabove quoted. The result is that the action of the Chancellors is reversed and a declaration is made according to the statements of this opinion.

SWEPSTON, JUSTICE, not participating.