George M. TIDWELL, Commissioner of
Revenue, Appellant,

v.

Hyman L. COLLINS, etc., et al., Appellees.

Supreme Court of Tennessee.

April 14, 1975.

R. A. Ashley, Jr., Atty. Gen., William J. Haynes, Jr., Asst. Atty. Gen., Nashville, for appellant.

Dale C. Workman, Norbert J. Slovis, Lockett, Slovis & Weaver, Knoxville, for appellees.

## OPINION

HENRY, Justice.

This suit in chancery seeks a refund of state inheritance taxes paid under protest. The Chancery Court at Knoxville held in favor of taxpayers and the Commissioner of Revenue has perfected an appeal.

I.

Plaintiffs, co-executors of the estate of Milton Collins, brought suit against George M. Tidwell, in his official capacity as Commissioner of Revenue of the State of Tennessee.

In the preparation and submission of the State inheritance tax return, they valued the life estate of a seventy-seven year old female beneficiary at a figure which was substantially increased by the Commissioner. The resulting increase in the tax lia-

bility was paid under protest and this suit was instituted.

At issue is the proper application and construction of Sec. 30–1613, T.C.A., which reads in pertinent part as follows:

The value of every future, contingent or limited estate, income, interest or annuity for any life or lives in being shall, *so far as possible*, be determined by the rule, method and standard of mortality and the value set forth in *the actuaries combined experience tables (sic) of mortality* . . . (Emphasis added)

It should be emphasized that the phrase "the actuaries combined experience tables" not only appears in lowercase but in the plural.

It is the contention of appellees that since this is not capitalized and is in the plural the statute does not have reference to the Actuaries Combined Experience Table of Mortality appearing on page 1148 of Volume 1, T.C.A., nor to the Annuity Valuation Tables ensuing at page 1154. They insist that the statute refers to no particular table and attempt to validate their insistence by showing that this particular table is one hundred thirty-one (131) years old, is out of date and its application is unfair and prejudicial. They urge the use of the 1937 Standard Annuity Table.

It is the contention of the Commissioner that the tax liability is to be determined pursuant to Sec. 30–1613, T.C.A. with the use of the Actuaries Combined Experience Table of Mortality in accordance with the long standing policy and practice of the Department of Revenue.

The Chancellor, quite correctly, took judicial notice of the fact that there has been a substantial increase in life expectancy. He held that the phraseology of the statute did not indicate or specify a particular table; that the Actuaries Combined Experience Table was out of date and that it was more sensible and appropriate to use the 1937 Standard Annuity Table. The Chan-

cellor commented upon, but did not attempt to construe the meaning of the phrase "so far as possible." Accordingly, judgment was entered for plaintiffs.

## II.

Section 30–1613, T.C.A. had its origin in Chapter 29, of the Public Acts of the Extraordinary Session of the 1929 General Assembly. It was carried forward into the official code of 1932 as Sec. 1270. It also appears in Michie's Codes of 1932, 1934, and 1938, under the same number. At no time has the title of the mortality table appeared in capital letters, nor has it ever come before this Court in any reported decision.

■ At the very outset we dispose of the contention with respect to the failure to capitalize the mortality table by holding that the statute refers to and designates the Actuaries Combined Experience Table of Mortality.

■ The premier rule of statutory construction is to ascertain and give effect to the legislative intent. Lawrence v. Lawrence, 35 Tenn.App. 648, 250 S.W.2d 781 (1952). In doing this we look to the general purpose to be accomplished. State v. Yoakum, 201 Tenn. 180, 297 S.W.2d 635 (1956).

■ It was the obvious intent for the Legislature in the adoption of this statute to provide a fair method for the evaluation of future interests for purposes of taxation.

■■ It is a fundamental rule of construction that statutes are not to be construed by strict and critical adherence to technical grammatical rules. The statute is intelligible and conveys a reasonable certainty of meaning, in its present form, insofar as the use of lowercases to designate the mortality tests is concerned. Were we

to construe this statute so as to impute a legislative intent to refer to unidentified and unidentifiable mortality tables, the result would be an absurdity and a repugnance which would defeat the purpose of the statute. Such a construction would be impermissible. Samuelson v. State, 116 Tenn. 470, 95 S.W. 1012(1906).

It is unfortunate that the Legislature selected a table of mortality which was outmoded at the time of its selection; however, this is a matter which addressed itself to its judgment and discretion. We have neither the jurisdiction nor the disposition to revise and update the statute by substituting a current mortality table for one characterized by its patent antiquity. Moreover, any specified table will itself ultimately become obsolete.

■ The effect of the obsolescence of the specified table, however, is not fatal to a fair, reasonable and just application of the statute. Nothing contained therein accords any exclusivity to the Actuaries Combined Experience Table. The statute provides that the value of a life estate "shall, *so far as possible,* be determined" by the table. It was the evident intent of the Legislature, by the use of this language, to recognize that many factors enter into life expectancy, and to point to this particular mortality table as a guide in the determination of the value of any future interest.

■ If not so construed, this phraseology renders the statute ambiguous, inconsistent and repugnant, and its application would result in injustice and hardship. It is the duty of the Court to reconcile inconsistent or repugnant provisions;[1] to place a construction thereon which will not be prejudicial to the public interest;[2] to construe a statute so that no part will be inoperative, superfluous, void or insignificant, and the one section will not destroy

---

1. Tennessee Elec. Power Co. v. Chattanooga, 172 Tenn. 505, 114 S.W.2d 441 (1937).

2. Burns v. Duncan, 23 Tenn.App. 374, 133 S.W.2d 1000 (1939).

another;[3] and further to give effect to every word, phrase, clause and sentence of the act in order to carry out the legislative intent.[4]

We have followed these recognized rules of construction. We are particularly concerned that this statute not be construed or applied in a prejudicial or oppressive manner. We are impressed with the manifest regard for justice which characterized the Chancellor's approach to this problem. We are also impressed with the commendable candor of the presentation made by the Assistant Attorney General in oral argument at the Bar of this Court. These approaches are in the highest tradition of the Bench and Bar.

The Chancellor noted the increase in life expectancy. We have delved into the matter, with interesting results.

From Volume 13, Encyclopedia Britannica, Life Expectancy, page 1091, et seq., we find that the Neanderthal man had an average life expectancy of twenty years. A Roman citizen, born during the golden age of Rome, could expect to live twenty-eight years, and so with the men of Athens during the classical Greek period. In medieval England man's average life span had increased to thirty-two years. By the year 1850, seven years after the adoption of the Actuaries Combined Experience Table, a female born in the United States had a life expectancy of 40.5 years. By 1900 this had increased to 50.07; by 1929, when the table was incorporated in the statute involved, it was 61 years, and during the years 1948–1960 it rose to 73 years.

The 1974 World Almanac, at page 1019, in a chart based upon information supplied by the Division of Vital Statistics, National Center for Health Statistics, shows that the life expectancy of a female born in 1972 is 75.2 years. Britannica's 1974 Book of the Year, based on the United Nations Hemographic Yearbook for 1971, shows the life expectancy of a female born in the United States to be 74.8 years.

We cite these statistics to show the manifest injustice which would result from the rigid application of any precise formula in an area marked by substantial fluctuation. We do not believe the Legislature had any such intent.

In the case sub judice the Commissioner relied upon the Actuaries Combined Experience Table, which shows the remaining life expectancy for a white female, age 77 to be 5.76 years. The Chancellor applied the 1937 Standard Annuity Mortality Table which gives a similar female an expectancy of 10.59 years.

In Crenshaw v. Knight, 127 Tenn. 708, 156 S.W. 468 (1913) in an opinion by the late Chief Justice Grafton Green, the Court had under consideration Sec. 12 of Chapter 174 of the Public Acts of 1893, carried forward into Shannon's Code as Section 737. This was the predecessor statute to sec. 30–1613 T.C.A. It provided that in valuing life estates

. . . the computation shall be made by the Carlisle Life Tables whenever the use of life tables is necessary or applicable.

In disposing of this case the Court said:

It will be observed that the section of the act of 1893 above quoted does not undertake to say that the Carlisle Life Tables should be used as a basis of computation in every case where it is necessary to value a life estate, but the provision is that such tables should be used whenever a case arises in which their use is necessary or applicable.

We have no hesitancy in concluding that the use of life tables is not necessary or applicable to this case.

The statutory direction to the appraiser is to fix the cash value of all annui-

---

3. Shelby County v. Hale, 200 Tenn. 503, 292 S.W.2d 745 (1956).

4. Flowers v. Aetna Cas. & Surety Co., 186 Tenn. 603, 212 S.W.2d 595 (1948).

ties and life estates, and in making his computation to use the Carlisle Tables—not as a fixed standard in every case, but only in cases to the settlement of which life tables are applicable or necessary.

The rules with respect to the use of mortality tables in the determination of an expectancy of life are well settled in Tennessee. While the use of such tables is permitted, and their value recognized, they are not conclusive. It is in fact the duty of commissioners, juries, and courts, in passing upon such matters, to hear testimony as to the age, habits, and health of the person whose expectation of life is being considered, and to take into consideration the character of his occupation if it be hazardous. If it appears, without controversy, that such a person is in a very low state of health, debilitated, and incurably afflicted, with scant hold upon life and little promise thereof, it would doubtless be improper to consider life tables at all. Such a person could have no expectancy, within the purview of the rule of law which justifies the introduction of such tables.

We find the rationale of this case to be most persuasive.

We note that Chancellor Gibson, with his usual clarity, laid down rules for ascertaining the value of life estates. Sec. 1117, Gibson's Suits in Chancery, Fifth Edition, reads in pertinent part:

Each case is determined on its own facts, the object being to ascertain the market value of the life estate in money, as practical businessmen would estimate it, if it were put on the market for sale.

Continuing, Chancellor Gibson lists various factors bearing upon the problem, viz: age, health, habits, longevity of parents and the presence or absence of hereditary disease, all of which combine to aid in a determination of the probable duration of life.

We accept these basic premises. All will concede that no prudent businessman, no experienced lawyer and no competent judge would view the life estate of a healthy, vigorous, robust person as being of equal value with that of a person of the same age in the last stage of a terminal illness, merely by blind adherence to an inexact, antiquated, and ever-changing formula. The Legislature had no such intent.

We, therefore, hold that Sec. 30–1613 T.C.A., taken in its entirety, contemplates the valuation of life estates, by taking into consideration the Actuaries Combined Experience Table of Mortality and such factors as will enable the Court to arrive at a reasonable conclusion as to the probable duration of the life of the life tenant. Such other factors include age, health, habits, longevity of parents, and the presence or absence of hereditary disease in the family.

The decision of the Chancellor is reversed, and this action is remanded for further proceedings consonant with the conclusions reached herein.

The costs of this appeal are taxed against the Department of Revenue.

SANDERS, Special Judge, and COOPER, BROCK and HARBISON, JJ., concurring.