**STATE ex rel. Peggy SONNENBURG, a resident of Shelby County, Tennessee, Plaintiff-Appellee,**

**v.**

**Gerald GAIA, et al., Defendants-Appellants.**

Supreme Court of Tennessee, at Nashville.

Oct. 7, 1986.

Robert Walker Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Linda M. Crouch, Heiskell, Donelson, Bearman, Adams, Williams & Kirsch, Memphis, for plaintiff-appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Michael W. Catalano, Deputy Atty. Gen., Nashville, for defendants-appellants.

## OPINION

PER CURIAM.

The issue in this case is whether in multi-district counties, Article II, § 9 of the Tennessee Constitution requires that a candidate for State Representative reside not only in the county for one year preceding election, but also reside for one year preceding election in the district in which he or she seeks election. We hold that Article II, § 9 requires only that the candidate reside within the county in which the district is located for one year preceding the election.

Plaintiff brought this action seeking a writ of mandamus ordering defendants, members of the Shelby County Election Commission (the Commission), to place her name on the August 7, 1986, primary election ballot as a candidate for the Republican nomination for State Representative in the 97th District. The chancellor heard the case on the pleadings and the parties' stipulation of facts. The chancellor issued the writ of mandamus, from which action defendants now appeal.

The pertinent facts do not appear to be in dispute. On June 3, 1986, plaintiff filed her nominating petition with the Commission. She had transferred her voter registration to the 97th District on the previous day and defendants concede that she has been a qualified voter in the 97th District at least since June 2, 1986. Prior to moving into the 97th District, according to records of the Commission, plaintiff resided in Shelby County, but in the 86th District.

The Commission refused to certify plaintiff as a candidate in the Republican Primary for State Representative. The sole reason given for this action both here and in the proceedings below is that plaintiff fails to meet the residency requirements of Article II, § 9 in that at the time of the November, 1986 general election, she will have been a resident in the 97th District for less than one year. No contention is made that plaintiff has not resided in Shelby County for one year.

The chancellor ruled on July 14, 1986, that plaintiff met the residency requirements in that she was a qualified voter in the 97th District and that she had been a resident of Shelby County for more than one year. He issued a writ of mandamus ordering the placement of plaintiff's name on the August 7, 1986 ballot. She ran unopposed and is now the Republican nominee running for State Representative in the 97th District in the November general election.

Article II, § 9 of the Tennessee Constitution provides the following:

No person shall be a Representative unless he shall be a citizen of the United States, of the age of twenty-one years, and shall have been a citizen of this state for three years, and a resident in the *county* he represents one year, immedi-

ately preceding the election. [Emphasis supplied.]

Since the Constitution of 1796, the Tennessee Constitution has required one year of residence "in the county." The present language found in Article II, § 9 was first adopted in the Constitution of 1835.

Defendants contend that Article II, § 9 was intended to require the representative to reside in the area which he or she represents for one year preceding the election. They argue that this intention can be gleaned from the history of the apportionment of representative districts, which shows that "county" and "district" are synonymous for purposes of Article II, § 9.

Prior to 1965, a county entitled to more than one representative was made into a multi-member district. *See, e.g.,* 1901 Tennessee Public Acts, ch. 122 (T.C.A. §§ 3-101-3-107) (repealed). Thus, the constituitonal residence requirement had the effect of requiring the person to reside in the district he or she represented. Defendants argue that this effect was the intent of the provision.

In 1965, as part of the response to the United States Supreme Court's apportionment decision, *Baker v. Carr,* 369 U.S. 186, 82 S.Ct. 691, 7 L.Ed.2d 663 (1962), a Constitutional Convention met to address certain constitutional provisions relating to the legislative department of state government. 1962 Tennessee Public Acts, ch. 2, § 1 (Extra. Sess.). The call did not include Article II, § 9, but it did include Article II, § 5. Amended section 5 as approved by the voters at the November 1966 general election provides as follows:

*Section 5* —The number of representatives shall be ninety-nine and shall be apportioned by the General Assembly among the several counties or districts as shall be provided by law. Counties having two or more representatives shall be divided into separate districts. In a district composed of two or more counties, each county shall adjoin at least one other county of such district; and no county shall be divided in forming such a district.

*Section 5a*—Each district shall be represented by a qualified voter of that district.

Amended section 5 thus mandates multi-district counties when a county is entitled to more than one representative, and prohibits multi-member districts. Defendants contend that section 5 as amended rendered the meaning of "county" in section 9 ambiguous since a resident of a multi-district county would be a resident of only one of the districts within the county. They ask us to hold that "county" means "district" in Article II, § 9, a meaning which according to defendants was clear prior to amendment of Article II, § 5 in 1966.

The courts are to construe constitutional provisions as written without reading any ambiguities into them. *Chattanooga-Hamilton Co. Hosp. Authority v. Chattanooga,* 580 S.W.2d 322, 327 (Tenn.1979). When a provision clearly means one thing, the judiciary should not give it another meaning. *Shelby Co. v. Hale,* 200 Tenn. 503, 292 S.W.2d 745, 748–49 (1956). In construing a constitutional provision, the courts should give "its terms their ordinary and inherent meaning." *Gaskin v. Collins,* 661 S.W.2d 865, 867 (Tenn.1983). We must give effect to the intent of the people adopting it, "as found in the instrument itself, and it will be presumed that the language thereof has been employed with sufficient precision to convey such intent...." *Shelby Co. v. Hale, supra,* 292 S.W.2d at 748.

We think that the word "county" in Article II, § 9 refers plainly and unambiguously to counties rather than districts.

This interpretation is supported by reference to Article II, § 10, regarding the qualifications of Senators. It provides in pertinent part:

No person shall be a Senator unless he shall be a citizen of the United States, of the age of thirty years, and shall have resided three years in this State, and one year *in the county or district,* immediately preceding the election. [Emphasis added.]

Like section 9, it was adopted originally in the Constitution of 1835 and was carried over unchanged into our present Constitution. The language employed in sections 9 and 10 plainly shows that the people adopting our Constitution could and did distinguish the words "county" and "district."

We further note that defendants' assumption that prior to the 1966 constitutional amendments there were no multi-district counties is incorrect. As part of its response to *Baker v. Carr, supra,* the General Assembly in 1965 passed in Extraordinary Session, chapter 3 of the Public Acts of 1965. That Act provided for multi-district counties for both senators and representatives in those counties entitled to more than one senator or representative.

In *Williams v. Carr,* 218 Tenn. 564, 404 S.W.2d 522 (1966), this Court, before the adoption of the 1966 constitutional amendments, struck down Chapter 3 insofar as it applied to the creation of separate senatorial districts within the same county. The Court held that the creation of these districts violated that part of Article II, § 6 providing that "no county shall be divided . in forming a district." (This section was amended in 1966 to mandate multi-district counties in counties with two or more Senators.)

Prior to the 1966 Amendments, however, no comparable restriction on multi-district counties existed for the House of Representatives. *Williams v. Carr* was limited to Senatorial districts. The General Assembly in 1965 created multi-district counties for the House of Representatives and specifically provided that candidates need not reside in the district so long as they resided in the county. Chapter 3, § 11; T.C.A. § 3–1–104. Thus, prior to the 1966 Amendments, it was not always the case as a matter of fact that candidates for Representative who resided in the county were necessarily residents in the district as well. That the Constitution of 1870 permitted multi-district counties for the House of Representatives further evidences the intention that "county" is not synonymous with "district" in Article II, § 9.

The chancellor held and the defendants concede, that plaintiff is a qualified voter in the 97th District for the purposes of Article II, § 5, *supra.* We agree with the holding of the chancellor that plaintiff meets the residency requirements of Article II, § 9.

The decision of the Chancery Court of Shelby County is affirmed. Costs are adjudged against defendants.

FONES, J., not participating