IN THE SUPREME COURT OF TENNESSEE
AT NASHVILLE

STATE OF TENNESSEE,        )
                              )
        APPELLEE,         )       HUMPHREYS COUNTY
                              )
v.                          )       Hon. Allen W. Wallace
                              )
WILLIAM E. HALL AND      )       No. 01S01-9703-CC-00068
DERRICK D. QUINTERO,    )
                              )
        APPELLANT.      )

**CONCURRING AND DISSENTING OPINION**

FILED

September 21, 1998

Cecil W. Crowson
Appellate Court Clerk

I concur in the majority's conclusion that the defendants' convictions and sentences of death should be affirmed. I write separately because I disagree with the majority's analysis of aggravating circumstance Tenn. Code Ann. § 39-2-203(i)(8) in this case and in State v. Odom, 928 S.W.2d 18 (Tenn. 1996). I would reverse Odom on the issue of (i)(8) and hold that aggravating circumstance (i)(8) is applicable when a defendant commits murder during his or her escape from lawful confinement. I would hold that the phrase "during an escape from lawful confinement" denotes the time frame beginning with the prisoner's unauthorized departure from the prison grounds and continuing until the prisoner is returned to lawful custody. This holding would: (1) remove any arbitrariness and ambiguity in the circumstance's application; (2) preserve the plain meaning of the statute's clear language; and (3) prevent the third prong of (i)(8) from duplicating (i)(6) so that no part of (i)(8) will be inoperative, superfluous, void or insignificant.

The aggravating circumstance in Tenn. Code Ann. § 39-2-203(i)(8) provides that a sentence of death may be imposed upon a finding that "the murder was committed by the defendant while the defendant was in lawful

custody *or* in a place of lawful confinement *or* during the defendant's escape from lawful custody or from a place of lawful confinement" (emphasis added). The leading case regarding the application of this aggravating circumstance is State v. Odom, 928 S.W.2d 18 (Tenn. 1996). In Odom, the defendant murdered an elderly woman while stealing her purse during his escape from a Mississippi jail where he was serving a life sentence for a previous murder conviction. On appeal, neither the defendant nor the state challenged the jury's finding that (i)(8) was applicable.

In Odom, the Court, without the benefit of argument from either party and without the development of facts supporting the circumstance's application, raised the (i)(8) issue sua sponte[1] and held that the jury erred in applying (i)(8). The Court reasoned:

> Our rationale is simple–"during" as used in the statute means "throughout the continuance of." The end of the escape marks the beginning of one's status as an "escapee." Although Odom was, assuredly, an "escapee," by no stretch can we say that the murder occurred during the defendant's escape from lawful confinement or during the defendant's escape from lawful custody or from a place of lawful confinement. When he committed the murder, Odom's escape was an accomplished fact--*a fait accompli.*

State v. Odom, 928 S.W.2d at 27 (emphasis added). The logical interpretation of Odom on the issue of (i)(8) is that the prisoner's escape was an accomplished fact once he had left the confines of the prison facility. In the absence of any development or analysis of the facts on the issue, this is the only reasonable interpretation of Odom.

---

[1]The State argued in its petition to rehear that it was never provided the opportunity to brief and argue the application of aggravating circumstance Tenn. Code Ann. § 39-2-203(i)(8).

The majority's logic implies that (i)(8) was inapplicable in Odom because the murder for which Odom was sentenced to death in Tennessee was unconnected with and did not further his escape. This logic is inaccurate. In Odom, the majority noted that:

> the defendant said that his initial intention was to accost Johnson and "snatch" her purse after having seen her in the parking garage beside her car.

Id. at 22. The jury could have easily made a sound and logical inference that Odom, after escaping from prison, needed money and killed the victim while stealing her purse to obtain money to continue or further his escape.[2] Accordingly, the jury could have found that Odom's actions furthered his escape just as the majority concludes that Hall and Quintero's actions furthered their escape. Because this Court raised the issue, however, sua sponte and decided without either development of facts or argument by either party, this Court merely supplanted the jury's findings with a finding of its own on the (i)(8) aggravator.

The majority's analysis in this case appears to distinguish Odom on two bases: (1) time; and (2) the fact that the defendants' acts furthered their escape (were "simply a step toward accomplishing the end"). Employing time as the sole distinguishing factor creates an ambiguous and arbitrary standard. Is an escape accomplished after a week, two weeks, or perhaps after six months? An escape, in my view, is simply ongoing until an escapee is returned to lawful confinement. Attempting to utilize time as a distinguishing factor on an ad hoc basis provides absolutely no guidance. Accordingly, the majority in this case,

---

[2]The apparent initial motivation for the attack on the 78-year-old victim was that the defendant wanted to steal her purse. As noted by the dissent in Odom, the defendant accosted the 78-year-old victim and forced her into her car during the robbery attempt.

3

unlike in <u>Odom</u>, now focuses on whether the murder also furthered the escape, i.e. whether the "murders were simply a step toward accomplishing this end."

I believe that the focus in (i)(8) should not be on whether the murder furthered the escape. Whether a murder was committed to further an escape or to avoid an arrest is specifically addressed by Tenn. Code Ann. § 39-13-204(i)(6). The focus in (i)(8), however, is on the defendant's status when the murder was committed. I believe that circumstance (i)(8) was codified to provide protection to society from escaped convicts who are less likely to be deterred by the prospect of further confinement from committing additional crimes. The danger Odom posed to society as a desperate escaped convict needing money is the precise danger that (i)(8) was designed to deter. Obviously, the threat of possible further confinement did not deter Odom, already sentenced to life imprisonment for murder, from robbing the victim, brutally raping her and stabbing her multiple times.[3]

Aggravating circumstance (i)(8) may be broken into three prongs: (1) murder while in lawful confinement; (2) murder while in lawful custody; or (3) murder during escape from lawful custody or confinement. As applied to the facts of this case, the first prong would apply to any killing that occurred while the defendants were *on the prison facility's premises*. The second would apply if the defendants had continued to be in lawful custody when they murdered the victims. <u>See</u> <u>Burns v. State</u>, 584 S.W.2d 827, 829 (Tenn. Crim. App. 1979) (holding inmate in constructive custody of correctional center although unguarded while receiving training on college campus; unauthorized leave

---

[3]The dissent in <u>Odom</u> indicates Odom's complete disregard for the law and welfare of others. The dissent noted that victim pleaded with Odom, during the attack, to stop and in her plea referred to the defendant as "son." The defendant then stated "I'll give you a son" and raped her in apparent retaliation before killing her.

4

constituted an escape from lawful custody). Neither of these prongs is applicable to this case.

The third prong encompasses a murder that occurs "during escape from lawful custody or confinement." See State v. Workman, 667 S.W.2d 44, 49 (Tenn. 1984) (holding (i)(8) applicable when a fleeing defendant killed officer who had arrested and escorted defendant from a Wendy's restaurant). If this language is construed only to encompass a murder occurring on the premises of a prison, the construction will duplicate the first prong thereby rendering the third prong superfluous. This Court, however, must construe a statute so that no part of it will be inoperative, superfluous, void or insignificant. Tidwell v. Collins, 522 S.W.2d 674, 676 (Tenn. 1975). The third prong, therefore, should apply when a defendant commits murder *off* the premises of the prison facility and *during an unauthorized leave* from confinement or custody. See generally State v. Gundlah, 702 A.2d 52, 58 (Vt. 1997) (interpreting "murder committed while . . . in custody under a sentence of confinement" to apply to *escaped* prisoners "who have shown by their previous conduct that additional deterrence may be required") (citing Model Penal Code § 210.6(3)(a), commentary at 136).

The legislature's choice of words in the statute also supports this conclusion. The legislature used the word "escape" in (i)(8) as a noun, indicating an accomplished fact. Had the legislature intended the language "during the defendant's escape from lawful custody or from a place of lawful confinement" to be limited only to the actual act of leaving the prison facility grounds, the legislature should have used escape as a verb, i.e., "while the defendant was escaping from lawful custody." Alternatively, the legislature could have limited the factor to "hot pursuit," as a handful of states have done, by explicitly limiting the circumstance's application only to murders committed to "effect, perfect or

5

during an attempt to perfect" an escape from lawful custody or confinement. See generally Cal. Penal Code § 190.2(5) ("The murder was committed for the purpose of avoiding or preventing a lawful arrest, or perfecting or attempting to perfect, an escape from lawful custody."); Nev. Rev. Stat. 200.033(5) ("The murder was committed to avoid or prevent a lawful arrest or to effect an escape from custody."); Utah Code Ann. § 76-5-202(1)(e) ("homicide was committed . . . for the purpose of effecting . . . escape").

The phrase "during escape" implies that the circumstance applies to a murder committed by a defendant while on escape status from a sentence of imprisonment. A defendant who has unlawfully departed from confinement or custody and temporarily regained his liberty is on "escape status" until returned to lawful custody. See generally People v. Davis, 400 N.Y.S.2d 735, 741 (N.Y. 1977) ("escaped from such confinement or custody and had not yet been returned"). Extending (i)(8) to murders occurring off the prison premises while a defendant is on escape status fulfills society's need for protection from escaped convicts who are less likely to be deterred from committing homicide merely by the prospect of possible further confinement. See generally People v. Davis, 794 P.2d 159, 181-82 (Colo. 1990) ("providing additional deterrence to persons with little to lose in committing criminal acts"). Accordingly, I believe that the legislature intended the third scenario of (i)(8) to apply when an escaped convict commits murder while on escape status or during an unauthorized leave from custody or confinement.

In the case now before us, the evidence establishes that the defendants murdered the victims during their escape from the state penitentiary in Eddyville, Kentucky, just as Odom murdered his victim during his escape from lawful confinement where he was serving a life sentence for a prior murder. The

6

majority distinguishes the present case on the basis that these defendants stole a car to further their escape. This contingency, however, is covered by aggravating circumstance (i)(6). Tenn Code Ann. § 39-13-204(i)(6) ("murder was committed for the purpose of avoiding, interfering with or preventing a lawful arrest . . .").

Limiting (i)(8)'s application to only those circumstances in which the proof establishes that the defendant killed another to further his escape would render the third prong of (i)(8) duplicative of (i)(6). I do not believe that the legislature intended the third prong of (i)(8) to apply only when (i)(6) is applicable. Moreover, I find it tenuous to distinguish this case from Odom especially when the facts in Odom were neither developed nor argued on the (i)(8) issue now before this Court.

In conclusion, I would overrule Odom's interpretation of (i)(8). I would hold that (i)(8) is applicable when a prisoner commits murder during an unauthorized departure from lawful confinement.

_____

JANICE M. HOLDER, JUSTICE

7