FILED
03/07/2025
Clerk of the
Appellate Courts

IN THE SUPREME COURT OF TENNESSEE
AT KNOXVILLE
September 5, 2024 Session

## ROBIN M. MCNABB v. GREGORY H. HARRISON

**Appeal by Permission from the Court of Appeals
Chancery Court for Loudon County
No. 12997     Tom McFarland, Chancellor**

_____

**No. E2022-01577-SC-R11-CV**

_____

This appeal addresses constitutional residency requirements for Tennessee municipal court judges.  Article VI, Section 4 of the Tennessee Constitution requires inferior court judges to be "elected by the qualified voters of the district or circuit to which they are to be assigned [and] have been a resident . . . of the circuit or district one year" prior to election.  Tenn. Const. art. VI, § 4.  The appellant, Robin McNabb, proceeding pro se, filed an election contest against the appellee, Gregory Harrison, contending that he was constitutionally ineligible to be elected as Lenoir City Municipal Judge.  Ms. McNabb asserted that "district" in Article VI, Section 4 refers to Lenoir City, and that Mr. Harrison had not lived within city limits in the year preceding.  The trial court found that "district" as used in Article VI, Section 4 refers to the modern-day judicial district.  Because Mr. Harrison resided in the Ninth Judicial District, the trial court found him to be eligible to serve as Lenoir City Municipal Judge.  The Court of Appeals affirmed the trial court, but modified the trial court's judgment, finding that Article VI, Section 4 required Mr. Harrison to be a resident of Loudon County, rather than the Ninth Judicial District.  *McNabb v. Harrison*, No. E2022-01557-COA-R3-CV, 2023 WL 7019872, at *8 (Tenn. Ct. App. Oct. 25, 2023), *perm. app. granted*, (Tenn. Apr. 11, 2024).  The Court of Appeals reasoned that because the Lenoir City Municipal Court has concurrent jurisdiction with the Loudon County General Sessions Court, "district" as used in Article VI, Section 4 means Loudon County.  *Id.*  We respectfully disagree.  We hold that Article VI, Section 4 requires a candidate running for a municipal judgeship to be a resident of the same municipality to which they will be assigned.  Therefore, Article VI, Section 4 of the Tennessee Constitution required Mr. Harrison to reside in Lenoir City.  Accordingly, we reverse the judgment of the Court of Appeals and remand to the Chancery Court for Loudon County.

**Tenn. R. App. P. 11 Appeal by Permission; Judgment of the Court of Appeals
Reversed and Case Remanded to the Chancery Court for Loudon County**

MARY L. WAGNER, J., delivered the opinion of the court, in which HOLLY KIRBY, C.J, and JEFFREY S. BIVINS, SARAH K. CAMPBELL, and DWIGHT E. TARWATER, JJ., joined.

Robin M. McNabb, Knoxville, Tennessee, Pro Se.

T. Scott Jones, Jordan D. Davis, and Baylee M. Brown, Knoxville, Tennessee, for the appellee, Gregory H. Harrison.

## OPINION

### I.    FACTUAL AND PROCEDURAL BACKGROUND

Robin M. McNabb was appointed as Municipal Court Judge for Lenoir City in 2016. In 2022, the Lenoir City Municipal Court judgeship was subject to election by the Lenoir City voters. Gregory H. Harrison, Ms. McNabb, and a third individual sought election. Mr. Harrison won the election on August 4, 2022. The Loudon County Election Commission certified the election results on August 18, 2022.

On August 23, 2022, Ms. McNabb filed a complaint in Loudon County Chancery Court challenging the election results pursuant to Tennessee Code Annotated section 2-17-101. Ms. McNabb argued that Mr. Harrison was constitutionally ineligible to serve because he had not resided within Lenoir City corporate limits for the year prior to the election. Ms. McNabb prayed that the trial court declare Mr. Harrison ineligible to serve as Lenoir City Municipal Judge; enter a temporary restraining order or injunction prohibiting him from taking office pending her lawsuit; and declare the August 4, 2022 election void pursuant to Tennessee Code Annotated section 2-17-113. The trial court denied Ms. McNabb's request for a temporary restraining order.[1]

On August 26, 2022, Mr. Harrison filed a motion to dismiss Ms. McNabb's complaint for failure to state a claim under Tennessee Rules of Civil Procedure 12.02(6). On September 12, 2022, the trial court conducted a hearing on the motion to dismiss. At that time, the trial court denied Mr. Harrison's motion to dismiss and, with agreement of the parties, heard the case on the merits.

Neither Ms. McNabb nor anyone else challenged Mr. Harrison's eligibility prior to the election. The parties stipulated that Ms. McNabb lived within city limits and Mr. Harrison did not. The parties agreed that the Lenoir City Municipal Judge must satisfy the residency requirements of Tennessee Constitution Article VI, Section 4 because the judge

---

[1] Ms. McNabb's request for a temporary restraining order was heard on August 26, 2022, by interchange by Judge Michael Pemberton due to the absence of the then-elected Chancellor. Chancellor McFarland took office on September 1, 2022, and heard the remaining issues in this matter.

is popularly elected and has concurrent general sessions jurisdiction. The parties disagreed on what Article VI, Section 4 requires.

Ms. McNabb argued that the Tennessee Constitution requires an elected municipal court judge to live within corporate limits of the municipality the judge serves. She asserted that the term "district," as used in Article VI, Section 4, cannot mean the modern-day judicial district because such districts did not exist at the time the section was first written. Ms. McNabb argued that in 1870, a "district" divided a county into smaller areas. Thus, "district" means an area smaller than a county, and this definition must apply consistently across all of Article VI, Section 4.

Mr. Harrison argued that Article VI, Section 4 does not require a municipal court judge, exercising concurrent jurisdiction with a general sessions court, to reside in the municipality in which the judge serves. Relying on a 2020 Tennessee Attorney General Advisory Opinion, Mr. Harrison asserted that "[a] 'district' or a 'circuit' connotes the geographic territory in which a court has jurisdiction . . . . Thus, a district is greater—in terms of both geographic territory and pool of voters—than any municipality within that district." Tenn. Op. Atty. Gen., No. 20-16, 2020 WL 6112990, at *2 (Oct. 2, 2020). Per Mr. Harrison, the applicable district is the Ninth Judicial District.

The trial court found that Mr. Harrison prevailed over the challenge asserted by Ms. McNabb. In its order entered on November 2, 2022, the trial court found that "district" as used in the Tennessee Constitution applied to the Ninth Judicial District. Therefore, the trial court found that Mr. Harrison "complied with Article VI, Section 4" by being a resident of the Ninth Judicial District.

On November 9, 2022, Ms. McNabb filed a Notice of Appeal. The Court of Appeals held that when a municipal judge exercises concurrent jurisdiction with the county general sessions court, the Article VI, Section 4 residency requirement is met as long as the judge resides within the county. *McNabb*, 2023 WL 7019872, at *7–8. In making this holding, the Court of Appeals found the terms "district" and "circuit" ambiguous. *Id.* at *3. The Court of Appeals disagreed with Ms. McNabb's assertion that "district," as used in Article VI, Section 4, referred to a subdivision of the county. *Id.* at *4. Instead, the Court of Appeals held that Article VI, Section 4 required residency in "the district or circuit to which they are assigned." *Id.* at *6. Because the Lenoir City Municipal Judge exercised concurrent jurisdiction with the Loudon County General Sessions Court, the Court of Appeals reasoned that Loudon County is the "district" to which the Lenoir City Municipal Judge was assigned. *Id.* at *7–8. Accordingly, the Court of Appeals affirmed the trial court's decision, but modified the judgment to clarify that Mr. Harrison complied with the residency requirements because he resided in Loudon County for at least one year, rather than the Ninth Judicial District. *Id.* at *8.

Ms. McNabb successfully sought permission to appeal to this Court pursuant to Rule 11 of the Tennessee Rules of Appellate Procedure.

## II.   ANALYSIS

The issue before this Court is one of constitutional interpretation.  Specifically, does Article VI, Section 4 of the Tennessee Constitution require a municipal judge to reside in the municipality she serves when the court exercises concurrent jurisdiction with the county general sessions court?  The parties agree that the interpretation of Article VI, Section 4 is dispositive of this matter.

### *Standard of Review*

This Court reviews questions of law de novo with no presumption of correctness accorded to the rulings of the courts below.  *State v. Burns*, 205 S.W.3d 412, 414 (Tenn. 2006).  When interpreting the Tennessee Constitution, we aim to enforce "what the people who voted for this constitutional [provision] would think that the language meant."  *State ex rel. Doyle v. Torrence*, 310 S.W.2d 425, 427–28 (Tenn. 1958).  This approach is more commonly known today as determining the "original public meaning."

The process of determining the original public meaning has often been inaccurately described as using the text to determine the intent of the drafters.  *See* Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 30 (2012).  In fact, this Court has used similarly imprecise language in its description of this method.  *See, e.g.*, *Est. of Bell v. Shelby Cnty. Health Care Corp.*, 318 S.W.3d 823, 835 (Tenn. 2010) ("This Court . . . must construe each provision in a way that gives the fullest possible effect to the intent of the Tennesseans who adopted it."); *Hatcher v. Bell*, 521 S.W.2d 799, 803 (Tenn. 1974) ("The fundamental purpose in construing a constitutional provision is to ascertain and give effect to the intent and purpose of those who adopted it.").  For almost a century though, we have made clear that we do not speculate on the subjective intentions or motives of the drafters.  *See Peay v. Nolan*, 7 S.W. 2d 815, 820 (Tenn. 1928).  Instead, "the focus must be on the objective meaning of the text itself—because that is the law that was adopted by the public." *Barnett v. Jones*, 338 So.3d 757, 767 (Ala. 2021) (Mitchell, J., concurring).  We clarify today that in construing constitutional provisions, this Court seeks to determine the original public meaning.

Determining the original public meaning does not require an overly narrow construction.  *See* Scalia & Garner, *supra*, at 355–58 (discussing the false notion that individual words should be strictly construed).  Thus, determining the original public meaning does not require a judicial straitjacket, "limit[ing] one to the hyperliteral meaning of each word in the text."  *Id.* at 356.  Instead, it requires courts to determine, using the evidence available, "how a reasonable reader, fully competent in the language, would have understood the text at the time it was issued."  *Id.* at 33.

"Original public meaning is discerned through consideration of the [] text in light of 'well-established canons of [] construction.'"[2]  *State v. Deberry*, 651 S.W.3d 918, 924 (Tenn. 2022) (citing *State v. Sherman*, 266 S.W.3d 395, 401 (Tenn. 2008)); *see also Kisor v. Wilkie*, 588 U.S. 558, 621–22 (2019) (Gorsuch, J., concurring in the judgment) ("[Judges have employed] traditional tools of interpretation . . . for centuries to elucidate the law's original public meaning.").  Consequently, we begin by reading the plain language and giving terms "their ordinary and inherent meaning."  *State v. Phillips*, 21 S.W.2d 4, 5 (Tenn. 1929).  Not only do we consider contemporaneous dictionary definitions, but also usages and historical practices at the time of the adoption of the text.  *See Peay*, 7 S.W.2d at 817; *Richardson v. Young*, 125 S.W. 664, 674 (Tenn. 1910); *Grainger Cnty. v. State*, 80 S.W. 750, 751 (Tenn. 1904).

In this process, we construe the Tennessee Constitution as a single, unified document.  *See Patterson v. Washington Cnty.*, 188 S.W. 613, 614 (Tenn. 1916).  No provision will be given construction that would "impair or destroy any other part."  *Vollmer v. City of Memphis*, 792 S.W.2d 446, 448 (Tenn. 1990) (citing *State v. Memphis City Bank*, 19 S.W. 1045 (Tenn. 1892)).

Finally, we construe a constitutional provision as it is written.  *See State ex rel. Sonnenburg v. Gaia*, 717 S.W.2d 883, 885 (Tenn. 1986) (citing *Chattanooga-Hamilton Co. Hosp. Authority v. Chattanooga*, 580 S.W.2d 322, 327 (Tenn. 1979)).  It is not this Court's role to create ambiguity.  When a constitutional provision has a clear meaning, this Court cannot apply another.  *See Shelby Cnty. v. Hale*, 292 S.W.2d 745, 749 (Tenn. 1956) (citing *State v. Manson*, 58 S.W. 319, 320 (Tenn. 1900)).

### *Residency Requirements for Municipal Judgeships*

Article VI, Section 4 does not apply to all municipal judgeships.  However, when a municipal court judge is popularly elected, the judge must meet the requirements of Article VI, Section 4 of the Tennessee Constitution.  Tenn. Code Ann. § 16-18-202 (2021).  Additionally, when a municipal judge exercises concurrent jurisdiction with a general sessions court, the municipal judge must meet the requirements of Article VI, Section 4.  *See State ex rel. Newsom v. Biggers*, 911 S.W.2d 715, 717 (Tenn. 1995).

Here, the Lenoir City Municipal Court Judge is popularly elected and exercises concurrent jurisdiction with Loudon County General Sessions Court.  Lenoir City, Tenn. Code, tit. 3, ch. 1., §§ 3-102, 3-103 (2013).  Thus, the parties agree, and the trial court

---

[2] Often these canons of construction reference statutory construction.  However, most are equally applicable to construction of constitutional text or any other legal text.  *See* Scalia & Garner, *supra*, at 51.

correctly determined, that the Lenoir City Municipal Judge must comply with Article VI, Section 4 of the Tennessee Constitution.

*Constitutional Residency Requirements*

To begin our analysis, the Court starts with the constitutional language itself. Article VI, Section 4 of the Tennessee Constitution provides:

> The Judges of the Circuit and Chancery Courts, and of other inferior Courts, shall be elected by the qualified voters of the district or circuit to which they are to be assigned. Every Judge of such Courts shall be thirty years of age, and shall before his election, have been a resident of the State for five years, and of the circuit or district one year. His term of service shall be eight years.

Tenn. Const. art. VI, § 4.

This language first appeared in the Tennessee Constitution adopted in 1870. Tenn. Const. of 1870, art. VI, § 4. The 1870 Constitution also included language that divided counties into districts to elect justices of the peace and constables. *Id.* art. VI, § 15; *see also Grainger Cnty.*, 80 S.W. at 753 ("As previously stated, when the Constitution of 1870 was framed, the present political organization of the state was in existence; the state itself was an organized body, was divided into counties, and these were subdivided into civil districts.").[3] In 1978, the constitution was amended to eliminate county justices of the peace and constables, but the residency provision at issue remained. *See* Tenn. Const. art. VI, § 4; *State ex rel. Maner v. Leech*, 588 S.W.2d 534, 537 (Tenn. 1979). The Tennessee Constitution does not define the terms "circuit" or "district."

To determine the original public meaning, we first turn to dictionary definitions published around the time the constitutional language was approved. *See Deberry*, 651

---

[3] Section 15 of the 1870 Tennessee Constitution provided:

> The different Counties of this State shall be laid off, as the General Assembly may direct, into districts of convenient size, so that the whole number in each County shall not be more than twenty-five, or four for every one hundred square miles. There shall be two Justices of the Peace and one Constable elected in each district by the qualified voters therein, except districts including County towns, which shall elect three Justices and two Constables. The jurisdiction of said officers shall be coextensive with the County. Justices of the Peace shall be elected for the term of six, and Constables for the term of two years. Upon the removal of either of said officers from the district in which he was elected, his office shall become vacant from the time of such removal. Justices of the Peace shall be commissioned by the Governor. The Legislature shall have power to provide for the appointment of an additional number of Justices of the Peace in incorporated towns.

Tenn. Const. of 1870, art. VI, § 15.

S.W.3d at 925 ("In the absence of [constitutional] definitions, we look to authoritative dictionaries published around the time of [the] enactment.") (citing *State v. Edmondson*, 231 S.W.3d 925, 928 & n.3 (Tenn. 2007)).

When Article VI, Section 4 was first ratified, "district" and "circuit" had separate and distinct meanings. "District" referred to a political subdivision and "circuit" meant a grouping of areas in which a judge traveled to hear cases. Webster's Dictionary in 1828 defined "district" as:

> Properly, a limited extent of country; a circuit within which power, right or authority may be exercised; and to which it is restrained; a word applicable to any portion of land or country, or to any part of a city or town, which is defined by law or agreement. A governor, a prefect, or a judge may have his *district.*

1 Noah Webster, *An American Dictionary of the English Language* (1828). The 1828 Webster's Dictionary defined "circuit" as:

> In England, the journey of judges through several counties or boroughs, for the purpose of holding courts. In the United States, the journey of judges through certain states or counties for the same purpose. The counties or states in which the same judge or judges hold courts and administer justice. It is common to designate a certain number of counties to form a circuit, and to assign one or more judges to each circuit. The courts in the circuits are called circuit courts. In the government of the United States, a certain number of states form a circuit.

*Id.*

In 1871, Bouvier's Law Dictionary defined "district" as "[a] certain portion of the country, separated from the rest for some special purposes." 1 John Bouvier, *Law Dictionary* 491 (14th ed. 1871). It defined "circuit" as "[a] division of the country, appointed for a particular judge to visit for the trial of causes or for the administration of justice." *Id.* at 267.

These definitions held true throughout the 19th century. In 1891, Black's Law Dictionary defined "district" as "[o]ne of the portions into which an entire state or country may be divided for judicial, political, or administrative purposes." *District*, *Black's Law Dictionary* (1st ed. 1891). The same dictionary defined "circuit" as:

> [a] division of the country, appointed for a particular judge to visit for the trial of causes or for the administration of justice. Circuits, as the term is used in England, may be otherwise defined to be the periodical progresses of the

7

judges of the superior courts of common law, through the several counties of England and Wales, for the purpose of administering civil and criminal justice.

*Circuit*, *Id.* (citation omitted). Our review of these dictionaries shows that "district" consistently referenced a smaller political subunit, while "circuit" referenced an area to which a judge traveled to hold court, similar to our modern-day judicial districts.

These historical definitions are consistent with this Court's previous interpretation of the constitutional meaning of the term "district." "As used in the Constitution, a 'district' is a political subdivision, usually a subdivision of a county, as determined by the legislature." *Hooker v. Haslam*, 437 S.W.3d 409, 434 (Tenn. 2014) (citing Tenn. Const. art. VI, § 15 ("repealed in 1978, but previously providing that the legislature was to divide Tennessee's counties into "districts of convenient size" for the purpose of electing justices of the peace and constables"); and Tenn. Const. art. VII, § 1 ("providing for the division of counties into districts from which legislators are to be elected and providing for the reapportionment of the districts from time to time")); *see also Maxey v. Powers*, 101 S.W. 181, 185 (Tenn. 1907) ("Civil districts are but territorial subdivisions of counties.").

Our earlier cases and cases from the 1800s in other jurisdictions also suggest that "circuit" and "district" had distinct meanings. *See, e.g.*, *Strain v. Hefley*, 30 S.W. 747, 747–48 (Tenn. 1895) (discussing whether a justice of the peace elected for one civil district of his county and having a residence there at the time of the election could open another office in another civil district of his county); *State ex rel. Hasley v. Gaines*, 70 Tenn. 316, 328–39 (1879) (discussing judicial positions in the event of redistricting); *State ex rel. Vail v. Draper*, 50 Mo. 353, 356 (1872) (discussing the boundaries of a circuit and territory of the court).

Further, modern-day judicial districts did not exist at the time of the 1870 Tennessee Constitution. The State of Tennessee was divided into its current judicial districts in 1984. *See* Tenn. Code Ann. § 16-2-506 (Supp. 2024). These districts are larger in size and most encompass multiple counties. We must apply the meaning of "district" that was used at the time of adoption, and the current judicial district was not yet in existence.

In interpreting constitutional provisions, this Court favors an interpretation that "will render every word operative rather than one which would make some words idle and meaningless." *Hale*, 292 S.W.2d at 749. Courts should presume that every word the drafters used has a specific meaning and purpose. Courts should avoid interpretations that render words inconsistent, meaningless, superfluous, or redundant. Scalia & Garner, *supra*, at 176. Accordingly, in applying Article VI, Section 4, the Court must presume that the terms "district" and "circuit" have different meanings. For this reason, the Court disagrees with any interpretation that conflates the two terms.

Here, the trial court held that, absent a definition, the term "district" equated to a judicial district. It therefore held that Mr. Harrison satisfied the residency requirement because he resided in the Ninth Judicial District.

Similarly, the Tennessee Attorney General Opinion No. 20-16, heavily relied upon by Mr. Harrison, describes "district" as used in the constitutional provision as "judicial district." Tenn. Op. Atty. Gen., No. 20-16, 2020 WL 6112990, at *2 (finding that "the Constitution requires only that the judge of an inferior court be a resident of the relevant judicial district"). As explained in the Attorney General Opinion:

> "Circuit" refers to a judicial division in which hearings occur at several locations. *Black's Law Dictionary* 305 (11th ed. 2019). The concept of a "circuit" derives historically from the time when a single judge rode "the circuit" to hold court at various places within a designated territory consisting of several counties. In Tennessee today, there is no longer any meaningful difference between a judicial district and a judicial circuit; there is a circuit court in each judicial district.

*Id.* at *2 n.7. Both the trial court and the Attorney General opinion seem to suggest that the terms "circuit or district" have one meaning, and that both refer to the judicial district. Such interpretations are flawed as they render the term "district" superfluous and redundant when it appears in the same provision with the term "circuit." Therefore, "district" cannot be interpreted to mean the modern-day judicial district.

In interpreting legal texts, the Court also must consider the entire text, known as the "whole text canon." Scalia & Garner, *supra*, at 167. In the constitutional provision at issue, the drafters used the terms "district" or "circuit" twice within the same provision. The first sentence of Article VI, Section 4 provides who elects the relevant judges; providing that they "shall be elected by the qualified voters of the *district or circuit* to which they are to be assigned." Tenn. Const. art. VI, § 4 (emphasis added). The second sentence of Article VI, Section 4 sets forth the qualifications of those to be elected, including that the judge "shall be thirty years of age, and shall before his election, have been a resident of the State for five years and of the *circuit or district* one year." *Id.* (emphasis added). In considering this language, the Court must apply a consistent definition to the term "district" and consider both sentences as a whole when deciding the meaning. Scalia & Garner, *supra*, at 170. Therefore, the term "district" cannot have inconsistent interpretations within the same text.

In determining the meaning of "district" as used in the second sentence, the Court of Appeals was correct to apply the limiting phrase "to which they are to be assigned" from the first sentence. The Court of Appeals also correctly found that "'[t]he relevant district or circuit for such a municipal court judge would be the district or circuit in which the municipal court has jurisdiction' and that '[a] "district" or a "circuit" connotes the

9

geographic territory in which a court has jurisdiction.'" *McNabb*, 2023 WL 7019872 at *7 (quoting Tenn. Op. Atty. Gen., No. 20-16, 2020 WL 6112990, at *2–3) (emphasis omitted).

The Court of Appeals, however, misconstrued the "district" to which the Lenoir City Municipal Court is assigned, or, in other words, the geographic territory in which it has jurisdiction. The Court of Appeals equated the ability of the Lenoir City Municipal Court to exercise concurrent jurisdiction with the Loudon County General Sessions Court with the Lenoir City Municipal Court being assigned to Loudon County. This application fails to recognize the limits on the territorial jurisdiction of the Lenoir City Municipal Court. In other words, it fails to recognize that the Lenoir City Municipal Court's jurisdiction is limited to the "district" to which it is assigned.

The Lenoir City Municipal Code provides the Lenoir City Municipal Judge concurrent jurisdiction with the Loudon County General Sessions Court. Lenoir City, Tenn. Code, tit. 3, ch. 1, § 3-102 (2013). However, the Lenoir City Municipal Court has no authority to exercise concurrent jurisdiction outside of the municipal city limits. Lenoir City's Charter and Municipal Code specifically limit the city court's concurrent jurisdiction to those violations that occur within the corporate limits. Lenoir City, Tenn. Charter, art. XIII, § 3; Lenoir City, Tenn. Code, tit. 3, ch. 1, § 3-102 (2013). This corresponds with our prior cases, where this Court has described municipal concurrent jurisdiction as limited to offenses that occur within the municipality's boundaries. *See, e.g.*, *State ex rel. Town of S. Carthage v. Barrett*, 840 S.W.2d 895, 898 (Tenn. 1992). Accordingly, the "district" to which the Lenoir City Municipal Judge is assigned—the geographic territory in which the court has jurisdiction—is Lenoir City. Following the whole text canon, we must apply the limiting language from the first sentence to the second sentence's residency requirements. Therefore, the "district" to which the judge is assigned is where the judge must also reside. In this case, that "district" is Lenoir City.

Lastly, there is also a presumption of consistent use by the drafters. Scalia & Garner, *supra*, 170. It is presumed that a word or phrase bears the same meaning throughout the text. *Id.* Mr. Harrison's proposed interpretation would result in inconsistent interpretations of the term "district" between the two sentences within Article VI, Section 4. Mr. Harrison conceded during oral argument that only Lenoir City voters were able to vote in the election for the Lenoir City Municipal Judge.[4] This is consistent with Tennessee Code Annotated section 16-18-201 (2021), which provides that "[i]n the election for city judge, only qualified voters of the city or town may vote." Additionally, this is consistent with the Lenoir City Charter and the Lenoir City ordinances that limit voting to only municipal residents. Lenoir City, Tenn. Charter art. III, § 3; Lenoir City, Tenn. Code, tit. 3, ch. 1, §3-103 (2013). Applying Mr. Harrison's expansive view of "district" for the residency requirement would result in two different definitions of the word "district" within Article

---

[4] Later in his argument, counsel did suggest that based upon his interpretation of the term "district" that arguably all of Loudon County should have voted on the Lenoir City Municipal Judge.

VI, Section 4. "District" would be narrowly defined to mean "Lenoir City" when it comes to defining the qualified voters, but broadly defined as "Loudon County" when it comes to residency requirements for the judge. We decline to adopt an interpretation that would require two different definitions of the term "district" within the same section.

While use of traditional tools of construction may require effort, the need for effort does not create ambiguity. *See Villarreal v. R.J. Reynolds Tobacco Co.*, 839 F.3d 958, 970 (11th Cir. 2016) (en banc). It is this Court's duty to apply those tools and find the plain meaning of the language at the time it was drafted. Applying those traditional tools of construction, it is clear that the terms "district" and "circuit" have separate and distinct meanings. Further, it is clear that "district" refers to the smaller political subunit to which the judge is to be assigned. In this case, that subunit to which the judge is assigned is Lenoir City. Therefore, we find that the plain language of Article VI, Section 4 of the Tennessee Constitution requires the Lenoir City Municipal Judge to reside in Lenoir City at the time of the election and for one year prior.

### III. CONCLUSION

For the foregoing reasons, we hold that the term "district" in Article VI, Section 4 refers to the geographical area where the court has territorial jurisdiction, or in other words, the area to which the judge is assigned. Therefore, we find that Article VI, Section 4 of the Tennessee Constitution requires a municipal judge to be a resident of that municipality for a period of one year prior to election. We reverse the judgment of the Court of Appeals and remand to Chancery Court for further proceedings consistent with this opinion. The costs of this appeal are taxed to the appellee, Gregory Harrison.

MARY L. WAGNER, JUSTICE

11